IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 19-402-01 |
| KHAIYRI BURGESS | : | |
| | : | |

## MEMORANDUM

**SURRICK, J.**                                                                 **NOVEMBER 29, 2019**

Presently before the Court is Defendant Khaiyri Burgess's Motion to Suppress Physical Evidence (ECF No. 43). For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

### A. Procedural History

On July 11, 2019, a grand jury returned a two-count Indictment charging Defendants Khaiyri Burgess and Shaquan Johnson with: (1) interference with commerce by threats or violence, and aiding and abetting, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act robbery") and 18 U.S.C. § 2; and (2) brandishing a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2. The Indictment alleged that Defendants, along with a third, unidentified individual, took approximately $1 million in United States currency from an individual through the use of force and violence. (ECF No. 16). On November 21, 2019, the Government filed a Superseding Indictment adding a third count against Burgess, for knowingly possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). (ECF No. 66).

On October 17, 2019, Burgess filed a Motion to Suppress Physical Evidence, asserting that the use by police of a key fob to locate and identify a Jeep was unlawful under the Fourth Amendment, and that all evidence seized during a subsequent search of the Jeep should be suppressed. (ECF No. 43). On November 1, 2019, the Government opposed the motion. (ECF No. 54). An evidentiary hearing was held on November 4, 2019. (ECF Nos. 55 & 56). At the evidentiary hearing, counsel for Burgess expressed the intent to file a supplemental memorandum regarding the Motion to Suppress Physical Evidence. Counsel filed the supplemental memorandum on November 14, 2019. (ECF No. 60). On November 21, 2019, the Government filed a supplemental response to the Motion to Suppress Physical Evidence. (ECF No. 65).

**B.    Relevant Facts**

On August 23, 2018, Philadelphia Police Officers Brian Lepkowski ("Lepkowski") and Marc Marchetti ("Marchetti") executed an arrest warrant for Burgess. The arrest warrant was related to a stolen Cadillac, which was related to the Hobbs Act robbery. (*See* November 4, 2019 Evidentiary Hearing Transcript ("Tr.") at 21-26, 43). Prior to the arrest, Officers Lepkowski and Marchetti went to the residence of Burgess's father to seek the father's assistance in setting up a meeting with Burgess. (*Id.* at 26-27). With the father's assistance, Burgess met the officers at 57th and Grays Avenue, in Philadelphia, at around 9:30 to 9:40 a.m. on August 23, 2018. (*Id.* at 26-28). At that time, the officers were in their vehicle on Grays Avenue, facing eastbound. (*Id.* at 28). When they saw Burgess walking up 57th and turn westbound on Grays Avenue, they exited their vehicle and arrested him. (*Id.*). Burgess was compliant and the arrest was uneventful. (*Id.*).

2

Following the arrest, the officers searched Burgess and recovered various items from him, including a key fob for a Jeep. (*Id.* at 30). Burgess was asked if he had purchased a new vehicle, to which he responded that he had not. (*Id.*). Burgess explained that the key fob was for his father's old Jeep and that he must have forgotten to take the key fob off his key ring. (*Id.*). The officers were suspicious of Burgess's response because they knew from earlier interactions with Burgess's father that his father drove a Mercedes. (*Id.* at 31). In addition, Burgess did not have a driver's license, and the alleged crime that gave rise to the arrest warrant was vehicle theft. (*Id.*).

After the arrest, the officers transported Burgess and his belongings to South Detectives for processing. (*Id.* at 31). They discussed the arrest and their suspicions about the key fob with Detective Andrew Gallagher ("Gallagher"), who was the lead detective on the case. (*Id.* at 32). They also informed Detective Gallagher that they were going to return to the area of the arrest to look for the Jeep. (*Id.* at 32-33). Detective Gallagher approved. (*Id.* at 113). The officers returned to the scene about an hour after the arrest. (*Id.* at 33). As they drove up the street, they saw only one Jeep on the block, and they hit the button on the key fob. (*Id.* at 34). The sole Jeep in the vicinity lit up and made sounds, indicating that it was a match for the fob. (*Id.* at 33-34). The vehicle was a black Jeep Grand Cherokee, and it was located on the 5700 block of Wheeler Street, Philadelphia, about one block away from the site of the arrest. (*Id.* at 37, 89, 97). Officer Lepkowski testified that he and Officer Marchetti could have used VIN numbers, registration information, and license plates and checked every Jeep in the vicinity to locate the subject vehicle, but the key fob made locating the vehicle easier. (*Id.* at 34-35).

When the officers located the Jeep, they looked inside of it, as is customary when locating and identifying a vehicle of interest. (*Id.* at 35). The windows were not tinted and it

3

was clear and sunny. (*Id.* at 36). From the window in the passenger-side front door and the windshield, the officers could see a tan-colored handgun underneath the passenger seat. (*Id.* at 35-37; Government Exhibit 3). They notified Detective Gallagher, who came to the scene and could also see the handgun from the window on the passenger-side front door, as well as through the windshield. (Tr. at 37-38, 97-98). The officers also ran the vehicle tag for the Jeep and determined that the tag was temporary and that the Jeep had not yet been registered to anyone. (*Id.* at 37-38, 97; Government Exhibit 1). After Detective Gallagher arrived, Officers Lepkowski and Marchetti stayed with the vehicle pending the issuance of a search warrant. (*Id.* at 38-39). That afternoon, the officers recorded the Jeep and key fob on a property receipt. (*Id.* at 39, 99-100; Government Exhibit 4).

Meanwhile, Detective Gallagher obtained a search warrant and searched the Jeep. (Tr. at 98-99; Government Exhibit 5). During the search, he recovered the handgun, a 9-millimeter Smith & Wesson with one round in the chamber and 13 in the clip, various items of new clothing with tags, a red gas can, some paperwork with Burgess's name on it, and $13,000 in cash. (*See* Tr. at 99; Government Exhibit 5). Pursuant to a separate search warrant for an Instagram account, Detective Gallagher also found an Instagram image showing Burgess standing near a black Jeep that appears to be the subject Jeep Grand Cherokee. (Tr. at 100-01; Government Exhibit 6).

## II. DISCUSSION

### A. Officers Lepkowski and Marchetti's Use of the Key Fob to Identify and Locate the Jeep Was Not a Search Subject to Fourth Amendment Protections

"There are two ways in which the government's conduct may constitute a 'search' implicating the Fourth Amendment. First, a Fourth Amendment search occurs when 'the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of

4

privacy that has been invaded by government action.'" *Free Speech Coalition, Inc. v. Attorney General*, 677 F.3d 519, 543 (3d Cir. 2012) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Second, "a Fourth Amendment search also occurs where the government unlawfully, physically occupies private property for the purpose of obtaining information." *Id.* (citing *United States v. Jones*, 565 U.S. 400, 404-05 (2012)). Counsel for Burgess asserted that she "is not relying on an expectation of privacy argument in [the] motion to suppress." (Tr. at 120). We therefore consider only whether Officers Lepkowski and Marchetti's use of the key fob to identify and locate the Jeep was a "physical occupation"-type search.

In *Jones*, the Supreme Court held that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" 565 U.S. at 404 (internal citation omitted). In reaching this conclusion, the Court reasoned that the government "physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 404-05. The Court specifically declined to apply its holding to cases "involv[ing] the transmission of electronic signals," reasoning that "[s]ituations involving merely the transmission of electronic signals without trespass" would be governed by the "reasonable-expectation-of-privacy test." *See id.* at 411 (citing *Katz v. United States*, 389 U.S. 347 (1967)).

Relying on *Jones*, the Eighth Circuit held that the use of a key fob's alarm button to locate a vehicle did not constitute a search. *See United States v. Cowan*, 674 F.3d 947, 955-56 (8th Cir. 2012). In *Cowan*, a detective apprehended a suspect in an apartment and asked the suspect how he got to the apartment. The suspect claimed that he took a bus, but a detective found a set of keys on the suspect. The detective then walked outside with the suspect and

5

, pressed the alarm button on the key fob, which set off an alarm for a vehicle parked outside the apartment. *See id.* at 951. Upon consideration of the trespass theory of a search, the court held that "the mere transmission of electric signals alone is not a trespass." *Id.* at 956 (citing *Jones*, 565 U.S. at 407-12). Although Burgess does not assert any expectation of privacy here, the Eighth Circuit in *Cowan* considered and rejected that argument also, reasoning that "[p]ressing the alarm button on the key fob was a way to identify the car and did not tell officers anything about the fob's code or the car's contents." *See id.* at 955; *see also United States v. Williams*, 773 F.3d 98, 105 (D.C. Cir. 2014) ("[T]he district court did not commit plain error—if it committed error at all—by failing to rule that the manipulation of the key fob constituted an unlawful search" where "[n]either this circuit nor any other has held that an officer's warrantless activation of a key fob to locate the vehicle to which it corresponds constitutes a search, let alone an unconstitutional one."); *State v. Maye*, 199 So.3d 357, 358 (Fla. Dist. Ct. App. 2016) (finding that pressing key fob button is not a search under the Fourth Amendment); *Commonwealth v. Harvard*, 64 A.3d 690, 696 (Pa. Super. Ct. 2013) (holding that officer's use of a key fob was not a search where the officer "did not use the key fob to gain entry to any concealed portion of the vehicle" and "[t]he key fob simply enabled [the officer] to make additional plain view observations from his lawful vantage point"); *State v. Bland*, 2013 WL 5755670, at *4 (Del. Super. Ct. Oct. 1, 2013) ("[S]ince the officers lawfully seized the key fob and the car was parked on a public street, the officer's use of the key fob to ascertain the identity of the vehicle was not a search under the Fourth Amendment."); *Wiley v. State*, 388 S.W.3d 807, 819 (Tex. App. 2012) (concluding that use of key fob alarm button to locate vehicle did not violate Fourth Amendment).

Analogizing this case to those in which police physically insert a key into a lock to determine if the key belongs to the car, Burgess argues that using a key fob to identify a vehicle constitutes an "electronic intrusion" because of the transmission of signals into and from the vehicle. We are not persuaded. Indeed, when police use flashlights to illuminate an object, they are transmitting light energy onto the object. However, as the Supreme Court has recognized, "the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection." *Texas v. Brown*, 460 U.S. 730, 740 (1983) (plurality opinion) (collecting cases); *United States v. Dunn*, 480 U.S. 294, 305 ("Here, the officers' use of the beam of a flashlight, directed through the essentially open front of respondent's barn, did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment."); *United States v. Hawkins*, 646 F. App'x 254, 257 n.5 (3d Cir. 2016) ("it is 'beyond dispute that [an officer's] action in shining his flashlight to illuminate the interior of [a] car trenche[s] upon no right secured to the latter by the Fourth Amendment'") (quoting *Brown*, 460 U.S. at 739-40).

Burgess's description of the key fob as "modern technology" and his attempt to bootstrap this case to *Kyllo v. United States*, 533 U.S. 27, 34 (2001), is similarly unavailing. In *Kyllo*, the Supreme Court said of a thermal imaging system used by law enforcement to measure heat inside a home that "obtaining by sense-enhancing technology any information regarding the interior of [a] home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area[] constitutes a search—at least where (as here) the technology in question is not in general public use." 533 U.S. at 34 (internal quotations and citations omitted). That is not the case here. The "modern technology" at issue here is a key fob, which, unlike a thermal imaging system, is widely available to the public.

7

Burgess also takes issue with the way in which the Philadelphia Police recorded Burgess's key fob and other personal belongings on property receipts and claims that the police did not follow the Philadelphia Police Department's policies regarding the use of property receipts. (Tr. at 65, 80-84; Burgess Exhibit 17). As Burgess's counsel argued at the evidentiary hearing:

> And what I'm getting at is that the Jeep key fob that was taken from him was never put onto a property receipt. Now [Officer Lepkowski] testified on direct that that's because it belongs to the Jeep, but they didn't note it at the time that it was confiscated. And I'm going to get to the point where there is a police directive, Number 12.15, that says items that are confiscated need to be logged on property receipts. What these officers do is not log a key fob onto a property receipt, but they take it out of the district, out of the place of arrest, walk around the city and start activating it. And this is absolutely germane to the motion to suppress. It is Mr. Burgess's position that that's a violation of policy and that that's part and parcel of what these officers did in unlawfully conducting a search without a warrant.

(Tr. at 65; *see also* ECF No. 51, Burgess's Br. at 7 ("Detectives did not log the items recovered from Mr. Burgess onto property receipts until the following day.")).

Counsel is partially correct that there is no property receipt that explicitly mentions the key fob. However, there is a property receipt for the Jeep that mentions that Burgess "was stopped with[] keys." (Government Exhibit 4). According to Detective Gallagher, this property receipt served to document the key fob and, because tow lots use keys to move cars, it is common to document a vehicle and its key on the same property receipt. (Tr. at 100).

In any event, even if Burgess's contentions about the property receipt procedures were entirely correct, that would not change our decision. First, law enforcement policies have only a limited bearing on the constitutionality of law enforcement activities, and Burgess does not actually assert that the officers' alleged failure to follow the property receipt policies led to a constitutional violation. *Cf. United States v. Williams*, 930 F.3d 44, 55 (2d Cir. 2019) ("[W]e do not think ... *every detail* of search procedure must be governed by a standardized policy.... A

8

police department's procedures must simply be adequate to safeguard the interests protected by the Fourth Amendment.") (quotations and citations omitted) (emphasis in original).

Second, even if Officers Lepkowski and Marchetti failed to follow the relevant property receipt policies, there is no evidence that they did so in bad faith. *See Colorado v. Bertine*, 479 U.S. 367, 374 (1987) ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment"). To the contrary, Officer Lepkowski and Detective Gallagher adequately explained their understanding of the property receipt procedures, as well as how, when, and why they implemented those procedures in this case. (*See* Tr. at 63, 82-87, 100, 111-14). If law enforcement's actions in this case deviated from the formal policies governing property receipts—and it is not clear that they did—those deviations were minor and discretionary and do not offend the Fourth Amendment. *See United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) ("[A]n officer's use of discretion in implementing agency guidelines regarding the conduct of an inventory search does not necessarily violate the Fourth Amendment."); *see also Florida v. Wells*, 495 U.S. 1, 4 (1990) ("[I]n forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion.... The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment.").

Finally, the crux of Burgess's motion is the constitutionality of using a key fob to locate a matching vehicle. Whether the key fob is properly recorded on a property receipt is irrelevant to whether the police conducted an unlawful search.

## B. Even if Officers Lepkowski and Marchetti's Use of the Key Fob to Identify and Locate the Jeep Was a Search, the Search Was Not Unlawful

Even if we assume that Officers Lepkowski and Marchetti's actions constituted a search, the question becomes whether the search was reasonable. "The touchstone of the Fourth Amendment is reasonableness, so [courts] determine the constitutionality of a search 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Henley*, 941 F.3d 646, 650 (3d Cir. 2019) (quoting *United States v. Knights*, 534 U.S. 112, 118-19 (2001)). Reasonableness "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

The circumstances of this case lead us to conclude that if there was a search, it was reasonable. First, as Burgess concedes (ECF No. 51, Burgess's Br. at 5), he has a "diminished expectation of privacy in an automobile." *See United States v. Knotts*, 460 U.S. 276, 281 (1983). Moreover, Burgess has little or no reasonable expectation of privacy in the "identity" of his car. *See, e.g., Cowan*, 674 F.3d at 955. Second, even in the case of home searches, where there is no such diminished expectation of privacy, several courts have held that "inserting a key into a lock is either not a search at all, or [is] so minimal an invasion of privacy that a warrant is not needed." *See United States v. Wheeler*, 742 F. App'x 646, 663 (3d Cir. 2018) (collecting cases). Relying on this line of cases, the court in *United States v. Brooks* held in the automobile context that "[t]he use of a keyless entry system, which does not require the user to touch the vehicle[,] is less intrusive than the use of an actual key in the lock. Thus, the use of the keyless entry system [to identify a matching vehicle] [is] 'so minimal an invasion of privacy' that a warrant [is] not needed." 358 F. Supp. 3d 440, 468 n.20 (W.D. Pa. 2018) (quoting *Wheeler*, 742 F. App'x at 663).

10

In *United States v. Dasinger*, 650 F. App'x 664 (11th Cir. 2016), police apprehended two individuals in a motel room after finding illegal drugs elsewhere on the premises. When the officers told the suspects that they would need to leave the room, the suspects told the police that they had been dropped off at the motel and did not have a car. The officers proceeded to search the room and found a used blunt, two scales, a box of clear sandwich bags, and a wad of cash. *See id.* at 667-68. When one of the officers noticed two sets of car keys in the room, one of the suspects, Dasinger, changed her story and explained that the keys were hers, but the cars that went with the keys were not on the motel premises. Skeptical, one of the officers picked up one set of the keys and pressed a button on the key fob. A Toyota in the motel parking lot responded. *See id.* Dasinger then changed her story again, this time explaining that she borrowed the Toyota from a friend and drove it to the motel, but did not want to tell the officers earlier because she did not have a driver's license. *See id.* at 668. Suspicious of criminal activity, the police walked a drug-detection dog around the Toyota. The dog alerted at the trunk of the vehicle. The officers then used the keys to open the trunk. Inside the trunk was more illegal drugs, a loaded gun, and almost $5,000 in cash. *See id.*

For purposes of its analysis, the Eleventh Circuit assumed that the police's use of the key fob was a search. *See id.* at 671. The court determined, however, that the search was not unreasonable under the totality of the circumstances. In so doing, the court reasoned that "[t]o the extent Dasinger had a privacy interest in the identity of the car, this interest was outweighed by the officers' legitimate interest in investigating the signs of criminal activity." *See id.* at 672 (internal citation omitted).

Here, although there were fewer signs of potential criminal activity than in *Dasinger*, there were some. As in *Dasinger*, Burgess's statements about the Jeep aroused suspicion in

11

Officers Lepkowski and Marchetti. In addition, Burgess was arrested pursuant to a warrant issued for a stolen vehicle, and even though the warrant pertained to a Cadillac, rather than a Jeep, it was not unreasonable for law enforcement to attempt to obtain more information about the Jeep under these circumstances. Accordingly, if Officers Lepkowski and Marchetti's conduct constituted a search, that search was made pursuant to a "legitimate governmental interest." *See Henley*, 941 F.3d at 650. The more critical factors here, however, are Burgess's minimal privacy interest in the Jeep, which he concedes, and the minimal invasion of privacy resulting from law enforcement's use of the key fob to identify the Jeep. Counsel's statement that Burgess "is not relying on an expectation of privacy argument in his motion to suppress" also renders his argument on this point problematic. (*See* Tr. at 120). Under the totality of the circumstances, any search conducted by law enforcement with respect to the key fob was reasonable.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Physical Evidence will be denied.

An appropriate order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.